## THE NANUET.

### (District Court, S. D. New York.   January 25, 1910.)

#### (Syllabus by the Judge.)

COLLISION (§ 45*)—SIGNAL AND TOW.

Collision between the tug Nanuet and a carfloat in tow alongside and the schooner Honora Butler in the East River near Corlear's Hook. The schooner was duly lighted and sailing up the river: The tug was bound down with two carfloats on her starboard side. *Held*, that the schooner kept her course and the collision was due to the tug's fault in not seeing the lights of the schooner and in failing to avoid her.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 51; Dec. Dig. § 45.*]

In Admiralty.   Action by Thyge J. Mikkelson against the steam-tug Nanuet.   Decree for libellant.

William C. Foster and Howard S. Harrington, for libellant.

Wilcox & Green, for claimant.

ADAMS, District Judge.   On the night of April 13, 1909, about 1:30 a. m., the schooner Honora Butler, about 76 feet long, laden with a cargo of manure, and bound for Naubuc, Connecticut, collided with the tug Nanuet and a carfloat in tow on the starboard side of the tug.   They were proceeding down the river.   The collision occurred about off Corlear's Hook.   The weather was clear, the tide strong flood.   The schooner was sunk causing a loss, said to have been $3,000 and upwards.

The libel alleges that the schooner set sail from Gowanus Bay about 11:30 p. m. on the 12th, properly manned, her master being at the wheel and a good lookout forward; that she carried the regulation lights properly set and burning brightly; that all went well until the schooner reached a position in the river about half way between the Brooklyn and Williamsburg Bridges, when those in charge saw the green light of a tug boat, which later proved to be the Nanuet, with a carfloat on her starboard side, a little below the Williamsburg Bridge; that at this time the schooner was about in the middle of the river and was heading on a course which would have carried her past Corlear's Hook about one-third of the way from the New York shore; that after sighting the green light the schooner held her course; that shortly thereafter and while the schooner and tug were still between a quarter and a half a mile apart, the tug blew two whistles to the schooner, which thereafter continued to hold her course; that the tug continued to display its green light for some time but when the vessels were only a short distance apart and each was showing her green light to the other, the tug suddenly ported her helm and swung across the bow of the schooner; that this manœuvre was made too late for the tug and tow to cross the schooner's bow in safety with the result that the tug and carfloat both came in collision with the schooner, catching her bow between the two, and inflicting such serious injuries that she sank in a few minutes; that the collision occurred

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

about one-third of the way over from the New York side. It is further alleged that the tug was in fault in that: (1) she maintained no sufficient lookout, (2) she did not pass the schooner starboard to starboard, (3) being the burdened vessel, she did not give the schooner a wider berth, (4) after blowing two whistles, she ported her helm and tried to cross the bow of the schooner and (5) she did not avoid the schooner.

The answer, after some admissions and denials, alleges:

"On the 12th day of April, 1909, at about 11:40 p. m., the tug Nanuet left Long Island City with two carfloats in tow on her starboard side, bound for Jersey City. The tide was flood, the wind strong from the southeast, and the atmosphere clear. The tug's lights were all properly set and burning, there were two competent lookouts forward on the floats, and the master and mate were in the pilot house, the latter having the wheel and the former keeping a lookout. After the tug had proceeded down the East River, favoring the Manhattan shore, and had arrived about abreast of Corlear's Hook, two tugs, one with a tow, were observed on the starboard bow of the tug, bound up the river. The Nanuet blew two whistles to the tugs, and received an answer of two whistles from the outside tug. Both tugs subsequently passed her starboard to starboard. After signalling the tugs, the Nanuet hauled more towards the Brooklyn shore, and when she was about mid-river, a sail vessel, which subsequently proved to be the Honora Butler, was observed about four points on her port bow, bound up with a free wind, heading clear of the Nanuet, but displaying no port light. Then the schooner's green light was suddenly opened and she headed for the tug. Danger of collision becoming imminent, the master of the tug at once took the wheel, put it hard aport, rang for full speed astern, and blew alarm whistles. The order to the engine was at once obeyed, but the schooner kept on towards the tug, and her bow came into collision with the bow of the tug and the port side of the inner of the two floats. It was then observed that the schooner was carrying a very high deck load.

Ninth: Claimant further alleges, upon information and belief, that said collision was wholly due to fault and negligence on the part of the schooner, in the following among other respects which will be pointed out upon the trial of this action: 1. She did not keep her course, but swung to port and attempted to cross the course of the tug. 2. Her port light was not burning. 3. She had no lookout. 4. She did not observe the tug until just prior to the collision. 5. She was carrying a deck load so high as to shut off or embarrass the view of her wheelsman. 6. She did not have a competent man at her wheel."

The testimony showed that the Butler was going up through the East River with a south south-east wind, close hauled, keeping well to the Brooklyn side. When opposite Arbuckle's Refinery, about Jay Street, the master, at the wheel, eased off his sheets and headed on a north-east course about for Corlear's Hook. She was then making, aided by the tide, about 6 knots per hour. The master then saw a green light, which, as it subsequently turned out, was on the Nanuet, about one-half a mile away. The schooner was then showing its green light to that vessel. The schooner kept on and if there had been no change on the part of the tug, there would have been no collision, but the tug, when the vessels were not far apart, suddenly changed to the starboard and brought the vessels together.

There was no dispute about the schooner showing her green light but it was strongly urged that her red light was not burning. It does not seem that this would have made any difference as the green light was always in view of the tug but if the red light had any bearing

whatsoever, upon the collision, there could be no reasonable doubt that it was properly displayed. The testimony on the schooner makes it clear that it, as well as the green, was duly lighted and shown. This was, as to its being displayed, confirmed by an outside witness, from the passing tug, who saw the light.

The schooner's navigation seems to have been without fault and is in substance correctly described in the libel. Her master was mistaken in supposing that the two whistle signal of the tug was intended for him, but that is immaterial. His navigation was not dependent upon signals. All that she was required to do was to keep her course and it was the duty of the tug to avoid her. In this the tug failed, making some notable mistakes in her navigation. The lookout on her part was deficient. She did not see the schooner when she should have, doubtless because the attention of those on her who should have performed this duty, was given to the tug bound up the river, following the schooner, which passed the schooner and also the Nanuet, the latter in conformity with an exchange of a two whistle signal. Having passed the tug, the Nanuet turned to the starboard and was suddenly confronted with the schooner, when she stopped and backed, doing what she could to avoid collision, but it was too late.

The tug's account of the lights and navigation of the schooner is incredible. Those on her apparently did not see the schooner when they should and then to explain the situation, they made some remarkable statements, for example, that the schooner with the southeast or south south-east wind and sailing up the river to the northeast, had her sails on her starboard side, a contention which has been abandoned by her counsel since the trial.

There will be a decree for the libellant, with an order of reference.